UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/1/2023
```

-----------------------------------------------------------------------X
                            :

KENNETH J. DRUMMOND,               :

                 Plaintiff,         :

                            :         23-cv-179 (LJL)

    -v-                  :

                            :      OPINION AND ORDER

IRA AKSELRAD and THE JOHNSON COMPANY, :
INC.                       :
                Defendants.    :

                            :
-----------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

      Plaintiff Kenneth J. Drummond ("Drummond" or "Plaintiff") brings this action against

Defendants The Johnson Company, Inc. ("The Johnson Company") and Ira Akselrad

("Akselrad," and collectively with The Johnson Company, "Defendants"), alleging claims under

the New York Labor Law, as well as breach of contract and promissory estoppel.  *See* Dkt. No. 1

("Complaint" or "Compl.").  Defendants move pursuant to Federal Rule of Civil Procedure

12(b)(6) to dismiss the third and fourth causes of action of the Complaint with prejudice.  Dkt.

No. 12.  For the following reasons, the motion to dismiss is granted without prejudice to

Plaintiff's filing of an amended complaint.

## BACKGROUND

      The Court accepts the well-pleaded allegations of the Complaint as true for purposes of

this motion.

      The Johnson Company is the private wealth management company established by the

descendants of Robert Wood Johnson, the founder of Johnson & Johnson, for the purpose of

providing, among other things, investment management, accounting support, estate planning

services, and management of philanthropic activities for members of the Johnson family and

related trusts.  Compl. ¶ 7.  Defendant Ira Akselrad is the President of The Johnson Company.
*Id.* ¶ 1.  Plaintiff became the Chief Financial Officer of The Johnson Company in 2006 and
worked in that role until his employment was terminated in March 2021.  *Id.* ¶¶ 1, 8.  His job
was to execute The Johnson Company's financial strategy to build and manage the Johnson
family's wealth.  His duties included, but were not limited to, working closely with Akselrad to
develop financial plans; managing accounting policies, procedures, and practices; assisting with
financial management of The Johnson Company's businesses, ventures and investments,
including the New York Jets; supervising the handling of accounts payable; assisting with the
Johnson family's philanthropic endeavors; and serving as a director of various Johnson family
entities.  *Id.* ¶ 9.

Plaintiff's lawsuit grows out of a change by The Johnson Company in or about 2017 to its
policy concerning the accrual of unused personal time off ("PTO"), a dispute between Plaintiff
and Akselrad regarding the application of the new policy to Plaintiff, and Defendants'
subsequent termination of Plaintiff's employment.  At the time Drummond began his
employment with The Johnson Company in 2006, the company's vacation policy allowed
employees to accrue unused PTO, which carried over, on an unlimited basis, from year to year.
*Id.* ¶ 10.  Employees were then allowed to collect accrued and unused PTO in cash upon their
separation from employment.  *Id.*  Initially, Drummond received four weeks of PTO per year,
which was increased to five weeks of PTO per year after he had been employed for five years.
*Id.* ¶ 11.  In or about 2017, The Johnson Company changed its PTO policy and adopted a new
policy set forth in The Johnson Company Employee Manual (the "Employee Manual"), effective
January 1, 2017.  *Id.* ¶ 12.  The new policy (the "2017 Policy") provided that employees could
carry over up to five unused PTO days from the previous year and required employees to use the

carried-over days before May 31 of the following year or to forfeit the carried-over PTO days.
*Id.* ¶ 13.  Plaintiff claims that he and other executive employees were grandfathered into the
previous PTO policy and continued to accrue all of their unused PTO.  *Id.* ¶ 14.  He alleges that
this was evidenced by pay stubs that he and the other executive employees received, which
continued to indicate the accrual of PTO in excess of five unused, carried-over PTO days despite
the adoption of the new PTO policy.  *Id.* ¶ 15.

On February 12, 2021, Plaintiff had a conversation with Akselrad about a salary increase.
*Id.* ¶ 18.  Akselrad regularly encouraged company employees to solicit offers for positions with
other employers to "demonstrate their worth," and in connection with their conversation
regarding a salary increase, Plaintiff informed Akselrad that Plaintiff had received a potential job
offer with a salary higher than what he was currently earning with The Johnson Company.  *Id.*
¶¶ 17, 19.  Akselrad initially offered to raise Plaintiff's salary by $50,000 a year for each of 2021
and 2022 and guaranteed him a bonus of between $50,000 and $100,000.  *Id.* ¶ 20.  In the course
of discussing the compensation increase, Plaintiff requested that he be paid his accrued and
unused PTO in a lump sum to his deferred compensation account.  *Id.* ¶ 21.  Akselrad responded
that as a result of the change in policy, The Johnson Company did not owe Plaintiff for his
accrued and unused PTO.  *Id.*  Nevertheless, he offered to make a one-time payment of some
proportion to Plaintiff's accrued PTO.  *Id.*  Plaintiff replied that he was owed his accrued and
unused vacation time because, as evidenced by the pay stubs, he was grandfathered into the
previous PTO policy.  *Id.* ¶ 22.  In response, Akselrad became demonstrably upset and took an
adversarial position towards Plaintiff, telling him "Hear my words, I will never agree to that.
Hear my words, I will never agree to that at all.  Never, never, never."  *Id.* ¶ 23.  Akselrad
continued to try to convince Plaintiff to accept a portion of his accrued PTO as a one-time

payment and threatened to retaliate against him if he did not agree to the proposal.  *Id.* ¶ 24.

Plaintiff made a compromise proposal under which he would receive a one-time payment for 202

days of unused PTO, which was significantly less than what was indicated on the pay stubs, on

February 12, 2021.  *Id.* ¶ 25.  But Akselrad immediately responded: "Yeah, you know I got a

different proposal.  I think you should take the other job."  *Id.* ¶ 26.

      Wishing to remain at The Johnson Company, Plaintiff sent Akselrad an email that same

day, stating: "Following up in connection with our conversations of this afternoon and to avoid

any misunderstandings, I have not given notice of any voluntary resignation of employment.  We

should continue our discussions next week.  In the interim, I will continue to perform my duties."

*Id.* ¶ 27.  In a telephone call three days later, on February 15, 2021, Plaintiff reiterated that he

had not resigned and intended to continue with The Johnson Company.  *Id.* ¶ 28.  Akselrad

responded that he had decided that Plaintiff "should take that other offer."  *Id.* ¶ 29.  Akselrad

further stated, "it does not matter," "it's done, it's done," "we are moving on and you should take

the other job," and that he had already spoken to Christopher Johnson and Woody Johnson[1]

about Plaintiff's dismissal and proposed severance package and "that's it."  *Id.* ¶ 30.

      On March 17, 2021, The Johnson Company "punitively" reduced its severance offer to

Plaintiff to a figure that "was significantly less than was paid to even a departing administrative

assistant, let alone an executive employee with fifteen years' service to the company."  *Id.* ¶ 34.

The Johnson Company had customarily paid departing employees one to two weeks of salary per

year of service as a severance package, which would have amounted to over $400,000 in the case

of Plaintiff.  *Id*. ¶ 35.  After Plaintiff's departure on March 19, 2021, The Johnson Company

---

[1] The Complaint does not identify who these individuals are and their roles in The Johnson Company.

reduced his accrued and unused PTO to 96.26 days, substantially less than the amount indicated on his pay stubs.  *Id.* ¶¶ 36–37

Defendants also took a number of actions that Plaintiff characterizes as retaliation.  On February 19, 2021, Akselrad sent Plaintiff a text message with the name of a potential employer which Plaintiff interpreted as a thinly-veiled threat to interfere with Plaintiff's attempts to secure alternative employment unless Plaintiff waived his claim to unpaid PTO and signed the release prepared by The Johnson Company's counsel.  *Id.* ¶ 31.  During a March 4, 2021 telephone call, Akselrad told Plaintiff that he had learned that Plaintiff had not secured alternative employment, to which Plaintiff responded that he had not "quit" as Chief Financial Officer.  *Id.* ¶ 32.  Akselrad gave another employee, who had been The Johnson Company's Director of Tax, the title of Chief Financial Officer before Plaintiff's departure, making it appear that Plaintiff had been removed from his position and thus making it more difficult for Plaintiff to secure alternative employment.  *Id.* ¶ 33.  Defendants also refused to allow him to port his work cellphone number to a personal account, even though they regularly allowed other departing employees to do so, and even though Plaintiff's cellphone had been his only cellphone for the previous fifteen years.  *Id.* ¶ 38.  Finally, while The Johnson Company allowed departing employees to use their work email address for a period of time post-departure, it did not afford Plaintiff the same opportunity.  *Id.* ¶ 39.

## PROCEDURAL HISTORY

Plaintiff filed his Complaint on January 9, 2023.  Dkt. No. 1.  It alleges claims for (1) retaliation in violation of New York Labor Law § 215, *id.* ¶¶ 40–42; (2) the unlawful deduction of wages in violation of New York Labor Law § 193, *id.* ¶¶ 43–46; (3) breach of contract for failure to pay Plaintiff all of his accrued and unused PTO, *id.* ¶¶ 47–52; and

(4) promissory estoppel for violation of the alleged promise to compensate Plaintiff for all of his accrued and unused PTO, *id.* ¶¶ 53–57.

On February 27, 2023, Defendants filed this motion to dismiss along with an accompanying memorandum of law and declaration.  Dkt. Nos. 12–14.  Plaintiff filed a memorandum of law in opposition to the motion to dismiss on March 20, 2023.  Dkt. No. 19.  Defendants filed a reply memorandum of law on March 27, 2023.  Dkt. No. 21.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal.  *Twombly*, 550 U.S. at 555, 557.  The ultimate question is whether "[a] claim has facial plausibility, [*i.e.*,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id*. at 679.  Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]."  *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

**DISCUSSION**

Defendants move to dismiss the third count of the Complaint for breach of contract and the fourth count of the Complaint for promissory estoppel for failure to state claims for relief. Defendants argue that the Complaint fails to identify any contract or promise that Drummond was grandfathered into the prior policy regarding PTO, Dkt. No. 13 at 1, 6–8; that New York law does not recognize a claim for promissory estoppel in the employment context, *id.* at 8–9; and, in any event, that the Complaint fails to allege a clear and unambiguous promise sufficient to support a claim for promissory estoppel, *id.* at 9–11.

The Court first addresses Plaintiff's claim for breach of contract. It then addresses his claim for promissory estoppel.

**I.      Breach of Contract**

Plaintiff alleges in his third count that The Johnson Company breached its agreement to pay him for his accrued and unused PTO. Compl. ¶ 51. He claims that on January 23, 2006, The Johnson Company entered into an agreement with him to employ him as Chief Financial Officer, and that the agreement included that he would receive initially four and then five weeks of PTO per year, that any unused PTO would accrue and carry over to subsequent years, and that all accrued and unused PTO would be paid in cash to Plaintiff upon the termination of his employment. *Id.* ¶¶ 48–49. He further alleges that he performed all of his obligations under the agreement and that The Johnson Company breached the agreement by failing to pay him for all of his accrued and unused PTO. *Id.* ¶¶ 50–51.

Defendants argue that the claim must be dismissed because Plaintiff fails to identify a valid contract. Dkt. No. 13 at 6. He does not identify any written agreement by which he was "grandfathered" into the prior policy, nor does he identify a valid oral contract, because he does not identify the speaker, when the agreement was made, or any details that support the existence

of a definite and binding agreement.  Dkt. No. 13 at 7.  Defendants note that Plaintiff admits that he was aware of the 2017 Policy, and that this policy provided that employees can only carry over up to five unused PTO days from the previous years and required employees to use the carried-over days before May 31 of the following year or else forfeit them.  *Id.* at 8; *see also* Compl. ¶¶ 12–13.  Defendants argue that the 2017 Policy was binding on Plaintiff and that Plaintiff does not allege that the PTO for which he was paid was inaccurate pursuant to that policy.  Dkt. No. 13 at 8.

In response, Plaintiff argues that Defendants misunderstand his claim.  He does not sue based on a new oral promise made that he was "grandfathered" into the old policy after the 2017 Policy was adopted, but on the basis of "the original policy under which he accrued, carried over and was entitled to the cash value of all of his unused PTO."  Dkt. No. 19 at 5.  He maintains that the 2017 Policy and his claimed exemption are best understood to constitute "modifications" of the original policy, which can be established from circumstantial allegations of the parties' conduct.  *Id.* at 5–6.  Plaintiff contends that his own pay stubs as well as those of other executives of The Johnson Company reflected the contractual modification and constitute circumstantial evidence that Defendants allowed him to continue to carry over unlimited PTO. *Id.*

A contract is "a promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty."  *Lauture v. Int'l Bus. Machines Corp.*, 216 F.3d 258, 261 (2d Cir. 2000) (quoting Restatement (Second) Contracts § 1 (1979)).  To establish an enforceable contract under New York law, there must be "an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound."  *I.C. ex rel. Solovsky v. Delta Galil USA*, 135 F. Supp. 3d 196, 208 (S.D.N.Y. 2015) (quoting *Kowalchuk v.*

*Stroup*, 873 N.Y.S.2d 43, 46 (1st Dep't 2009)); *see also* N.Y. Jur. 2d Contracts § 9; *Mizuna, Ltd. v. Crossland Fed. Sav. Bank*, 90 F.3d 650, 658 (2d Cir. 1996) ("A valid contract requires a manifestation of mutual assent to a bargained-for exchange.").  Mutual assent is manifested in "a meeting of the minds."  *See Dreyfuss v. Etelecare Glob. Sols.-U.S. Inc*., 349 F. App'x 551, 554 (2d Cir. 2009) (finding that a contract was never formed because there was no "meeting of the minds necessary for the existence of an enforceable contract"); *Specht v. Netscape Commc'ns Corp.*, 150 F. Supp. 2d 585, 587 (S.D.N.Y. 2001), *aff'd*, 306 F.3d 17 (2d Cir. 2002) ("Promises become binding when there is a meeting of the minds and consideration is exchanged."); *Kelly Asphalt Block Co. v. Barber Asphalt Paving Co*., 105 N.E. 88, 89 (N.Y. 1914) ("A contract involves a meeting of the minds of the contracting parties.").  For consideration to be valid, it must be "bargained for," meaning that the promisor must seek it in exchange for his promise, and the promisee must give it in exchange for that promise.  *See Ferguson v. Lion Holdings, Inc.*, 312 F. Supp. 2d 484, 494 (S.D.N.Y. 2004) ("Consideration is simply a bargained-for exchange of promises or performance."); *Startech, Inc. v. VSA Arts*, 126 F. Supp. 2d 234, 236 (S.D.N.Y. 2000) ("Consideration is defined as either a bargained for gain or advantage to the promisee or a bargained for legal detriment or disadvantage to the promisor."); *Von Bing v. Mangione*, 766 N.Y.S.2d 131, 133 (3d Dep't 2003) (same); Restatement (Second) Contracts § 71 (same).  Although "the adequacy of consideration is not a proper subject for judicial scrutiny," consideration is only effective if "something of 'real value in the eye of the law' was exchanged."  *Apfel v. Prudential-Bache Sec. Inc.*, 616 N.E.2d 1095, 1097 (N.Y. 1993) (citation omitted).  In a case for breach of contract, "when it is clear from the face of the pleading and the terms of the contract that a promise is gratuitous, the complaint will be dismissed."  *Startech, Inc.*, 126 F. Supp. 2d at 236.

The elements of a breach of contract claim under New York law are: (1) the existence of a contract; (2) performance by plaintiff; (3) a breach by the defendant; and (4) damages. *Terwilliger v. Terwilliger*, 206 F.3d 240, 246 (2d Cir. 2000) (citation omitted).  "A sufficient pleading for breach of contract must 'at a minimum, allege the terms of the contract, each element of the alleged breach and the resultant damages in a plain and simple fashion.'" *Warren v. John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610, 624 (S.D.N.Y. 2013) (quoting *Zaro Licensing, Inc. v. Cinmar, Inc.*, 779 F. Supp. 276, 286 (S.D.N.Y. 1991)).  "New York courts require plaintiffs to 'plead the provisions of the contract upon which the claim is based'—in other words, 'a complaint in a breach of contract action must set forth the terms of the agreement upon which liability is predicated.'"  *Anders v. Verizon Commuc'ns*, 2018 WL 2727883, at *8 (S.D.N.Y. June 5, 2018) (quoting *Window Headquarters, Inc. v. MAI Basic Four, Inc.*, 1993 WL 312899, at *3 (S.D.N.Y. Aug. 12, 1993)).  Moreover, "[i]t is well settled that for a contract to be valid, the agreement between the parties must be definite and explicit so their intention may be ascertained to a reasonable degree of certainty.  Even if the parties believe that they are bound, if the terms of the agreement are so vague and indefinite that there is no basis or standard for deciding whether the agreement had been kept or broken, or to fashion a remedy, and no means by which such terms may be made certain, then there is no enforceable contract."  *Foros Advisors LLC v. Digital Globe, Inc.*, 333 F. Supp. 3d 354, 360 (S.D.N.Y. 2018) (quoting *Candid Prods., Inc. v. Int'l Skating Union*, 530 F. Supp. 1330, 1333 (S.D.N.Y. 1982)).  "Thus, to plead a claim for breach of contract . . . , a plaintiff 'must provide specific allegations as to an agreement between the parties, the terms of that agreement, and what provisions of the agreement were breached as a result of the acts at issue.'"  *Nuevos Aires Shows LLC v. Bühler*, 2020 WL

1903995, at *4 (S.D.N.Y. Apr. 17, 2020) (quoting *Valentini v. Citigroup, Inc.*, 837 F. Supp. 2d 304, 327 (S.D.N.Y. 2011)).

Personnel handbooks and manuals qualify as valid contracts under New York law and typically govern the right of an at-will employee to vacation benefits and PTO.  *See Tubo v. Orange Reg'l Med. Ctr.*, 690 F. App'x 736, 740 (2d Cir. 2017) ("An employee's entitlement to receive payment for accrued, unused vacation time upon termination of employment is governed by the terms of the employer's publicized policy."); *Yurman v. Printex Packaging Corp.*, 2008 WL 11417672, at *8 (E.D.N.Y. Sept. 22, 2008); *Hardekopf v. Sid Wainer & Son*, 2004 WL 2199502, at *8 (S.D.N.Y. Sept. 29, 2004); *Gennes v. Yellow Book of New York, Inc.*, 806 N.Y.S.2d 646, 648 (2d Dep't 2005); *Spencer v. Christ Church Day Care Ctr. Inc.*, 720 N.Y.S.2d 633, 634–35 (3d Dep't 2001).  At the same time, however, it is a general proposition of law that company manuals are not immutable; what a company promises in a manual one day, it may prospectively take away the next.  "Case law dictates that when parties have an employment contract terminable at will, the contract can be modified and different compensation rates fixed without approval of the other party since the dissatisfied party has a right to leave his employment." *Arakelian v. Omnicare, Inc.*, 735 F. Supp. 2d 22, 32–33 (S.D.N.Y. 2010) (quoting *Gen. Elec. Technical Servs. Co. v. Clinton*, 577 N.Y.S.2d 719, 720 (3d Dep't 1991)); *see also Cousar v. New York-Presbyterian/Queens*, 2019 WL 4015440, at *21 (E.D.N.Y. Aug. 26, 2019) (same).  "If an employer changes the terms of its employee's at-will employment contract 'and the employee chooses to remain in the employer's employ after being advised of that change, the employee is deemed to have acquiesced to the new terms of employment and cannot later claim compensation based on the terms of the original contract.'" *Arakelian*, 735 F. Supp. 2d at 32–33 (quoting *In re Footstar, Inc.*, 2007 WL 1989290, at *5 (Bankr. S.D.N.Y. July 6, 2007)).

11

Defendants are correct that Plaintiff fails to allege a written or oral contract pursuant to which he was grandfathered into the prior PTO policy and exempted from the 2017 Policy. The most that the Complaint alleges is that Plaintiff "and other executive employees . . . were grandfathered into the previous PTO [p]olicy and continued to accrue all of their unused PTO days." Compl. ¶ 14. Plaintiff does not allege who conveyed the offer, when it was conveyed, or what its terms were. He thus has failed to allege that there came a moment where there was a meeting of the minds between The Johnson Company and Plaintiff that—notwithstanding the terms of the 2017 Policy—Plaintiff would be permitted to enjoy the benefits granted him under the previous policy.

Plaintiff alleges that the purported agreement "was evidenced by the pay stubs [he] and the other executive employees [received] which continued to indicate the accrual of PTO in excess of five unused carry over PTO days despite the adoption of the new PTO [p]olicy." *Id*. ¶ 15. He does not allege, however, that the pay stubs themselves constituted an offer that, if Plaintiff accepted in exchange for valid consideration, would result in a meeting of the minds pursuant to which The Johnson Company would have become obligated to carry over unused PTO from prior years in excess of five days. According to Plaintiff's allegations, Plaintiff and all other executive employees received pay stubs reflecting the continued accrual of their unused PTO. Compl. ¶¶ 14–15. The practice was indiscriminate. It resulted in all executive employees receiving pay stubs with their accrued and unused PTO. It also allegedly was a continuation of the prior practice; the practice merely stayed in place after the 2017 Policy was adopted. *Id*. ¶ 15. Those allegations are utterly inconsistent with the notion that the pay stubs were issued with the view in mind that, in exchange for the unused and accrued PTO, the executive employee would agree to continue to work for The Johnson Company and that, in the absence of being

given accrued and unused PTO, the employee would be free to leave.  In short, the Complaint does not allege "a meeting of the minds on all essential terms." *Town & Country Linen Corp. v. Ingenious Designs LLC*, 2021 WL 4892857, at *2 (S.D.N.Y. Oct. 19, 2021).  At best, The Johnson Company extended Plaintiff and all other executives the promise of a gift without any expectation it would receive consideration in return and therefore without any obligation not to retract it.  *See May v. Esposito*, 1997 WL 362447, at *2 (S.D.N.Y. July 1, 1997) ( "It is axiomatic that a promise of a gift is unenforceable as a contract and that consideration must be bargained for in exchange for a promise."); *In re Greene*, 45 F.2d 428, 430 (S.D.N.Y. 1930) ("A man may promise to make a gift to another, and may put the promise in the most solemn and formal document possible; but, barring exceptional cases . . . , the promise will not be enforced.  The parties may shout consideration to the housetops, yet, unless consideration is actually present, there is not a legally enforcible contract."); *see also St. Louis Hay & Grain Co. v. United States*, 191 U.S. 159, 163 (1903) ("A promise to make a gift does not bind."); *Seymour v. Seymour*, 51 N.Y.S. 130, 131 (2d Dep't 1898) ("[A] gift, as the definition states, must be without consideration.  If it was given for a consideration, it was a contract." (internal quotation marks omitted)).  Although, as discussed below, a promise of a gift—if relied upon—might support a claim for reliance damages in promissory estoppel, it cannot support a claim for breach of contract with contract damages.  *See Cyberchron Corp. v. Calldata Sys. Dev., Inc.*, 47 F.3d 39, 45 (2d Cir. 1995) (supporting an expansive view of promissory estoppel doctrine) (citing *Ripple's of Clearview, Inc. v. Le Havre Assocs.*, 452 N.Y.S.2d 447, 449 (2d Dep't 1982)); *Gabriel v. Kost*, 2001 WL 1491374, at *3 (N.Y. Civ. Ct. Oct. 23, 2001) (noting that "[t]here may be situations in which the promise [for a gift] can be enforced to a limited extent under the doctrine of 'promissory estoppel,'" but acknowledging it as an open issue under New York law);

Restatement (Second) of Contracts § 90 (1981) (stating that a promise to make a gift may be enforced by reliance if conduct is "foreseeable and reasonable and involves a definite and substantial change of position which would not have occurred if the promise had not been made"); *see, e.g.*, *Schmidt v. McKay*, 555 F.2d 30, 36 (2d Cir. 1977) (enforcing promissory estoppel where promises were made to plaintiff to credit past years of service to union pension).

Thus, regardless of whether there came a time that Plaintiff in fact relied on the understanding he would continue to accrue PTO that he did not use (a point addressed below), Defendants' pay stubs indicating that Plaintiff had accrued unused PTO notwithstanding the 2017 Policy were not issued by Defendant with the understanding that Defendants would receive anything in exchange and thus cannot give rise to an agreement creating binding contractual obligations on the part of Defendant. Thus, Plaintiff has not alleged that a valid and enforceable contract existed that entitled him to accrue all of his PTO in contravention of the 2017 Policy.

Plaintiff's argument that he has a contractual right to be exempted from the 2017 Policy is no more successful when he frames it as a contractual modification. On Plaintiff's theory, both the 2017 Policy and his exemption from it constitute contractual modifications to the original practice pursuant to which he was allowed to accrue unused PTO without limit. Dkt. No. 19 at 5. Plaintiff argues that contractual modifications can be proven on the basis of circumstantial, post-contractual conduct alone and that there need not be explicit evidence of mutual assent if such conduct was consistent with the formation of an agreement. *Id*. at 6. Although there is New York case law that "[m]odifications of written contracts may be proved circumstantially by the conduct of the parties subsequent to the agreement," *Kamhi v. E. Coast Pain Mgmt., P.C.*, 112 N.Y.S.3d 189 (2d Dep't 2019), a plaintiff alleging contract modification must still allege "each element requisite to the formulation of a contract, including mutual assent

to its terms," *id*. (quoting *Beacon Term. Corp. v. Chemprene, Inc.*, 429 N.Y.S.2d 715 (2d Dep't. 1980)).

The text of the 2017 Policy, which, along with the Employee Manual, is explicitly referred to in the Complaint and thereby incorporated by reference, states that it "will supersede all previous Attendance and Paid Time-Off Policies." *See* Compl. ¶¶ 12–13; Dkt. 14-2 at 6. Although the Employee Manual provides that there may be exceptions to specific policies, it also states that "[n]o one other than the President has the authority to enter into an employment contract or make any agreement contrary" to the policies and benefits that the Employee Manual lays out. Dkt. No. 14-2 at 2. The Employee Manual further states that an agreement providing for exceptions "shall not be enforceable unless it is in writing and signed by the President." *Id*. Plaintiff does not point to any specific agreement between Defendants and himself, and certainly no agreement in writing, to grant him such an exception. Furthermore, Plaintiff acknowledges that Akselrad denied that such an agreement ever existed in their initial conversation concerning this matter. Compl. ¶¶ 21, 23.

In addition, notwithstanding the absence of a written agreement signed by Akselrad granting Plaintiff an exemption from the 2017 Policy, Plaintiff has failed to allege that there was any meeting of the minds necessary for such modification. According to Plaintiff, Defendant engaged in conduct following the adoption of the 2017 Policy that resulted in yet another modification at some indeterminate time after the 2017 Policy. The conduct presumably consisted of Defendants sending Plaintiff paystubs that included unused PTO that Plaintiff earned prior to 2017, and that was not used by May 31 of 2018, or that he accrued after 2017, but that he did not use before May 31 of the year after he earned the PTO. In Plaintiff's view, the inclusion of such PTO in his paystubs—which Defendants could have forced Plaintiff to forfeit

but did not—constituted an offer to Plaintiff at least as of when the paystub was issued.  But that theory does not work.  Plaintiff's theory was that the 2017 Policy was a modification of the contract, and then that following subsequent conduct, there was a modification of that policy. Under Plaintiff's theory, The Johnson Company could have terminated Plaintiff during this intervening period between the 2017 Policy and the subsequent modification at some unspecified date, and Plaintiff would have lost his unused PTO.  Plaintiff likewise would not have been entitled to his unused PTO during this intervening period if Plaintiff had left The Johnson Company at some point.  There is no allegation of conduct during that intervening period that could give rise to a reasonable inference that, despite the promulgation of the 2017 Policy, there was some other implicit policy in effect.  Defendant here never allowed Plaintiff to enjoy any of the old accrued and unused PTO, and there was not a day when Defendant sent Plaintiff a paystub with the understanding that, in exchange, Plaintiff would agree not to take PTO. According to Plaintiff's allegations, there was no change in conduct following the 2017 Policy. That Defendant did not terminate Plaintiff before the purported subsequent modification cannot alone support an inference that Defendant agreed after the 2017 Policy that Plaintiff could keep his accrued PTO.  Therefore, there was no conduct that would evince a meeting of the minds as to such modification.  Absent such mutual assent, Plaintiff has failed to allege a valid modification of the 2017 Policy.  This case thus is unlike *Kamhi v. East Coast Pain Management*, 112 N.Y.S.3d 189, 190 (2d Dep't 2019), in which the Second Department held that a modification was effected to a written contract through a practice pursuant to which the plaintiff agreed in emails to work for the defendant at a reduced rate of per diem pay and after the parties exchanged emails regarding that reduced rate of pay, the plaintiff continued to work for defendant and defendant paid plaintiff that reduced rate of pay.

16

Finally, Plaintiff relies on *Winters v. American Express Tax & Bus Servs., Inc.*, 2007 WL 632765 (S.D.N.Y. Feb. 27, 2007). However, that case is distinguishable. The plaintiff there was able to allege what Plaintiff here has not. In *Winters*, as here, the plaintiff claimed that he had a contractual right to carry forward unused PTO into the year after that PTO was accrued and earned, notwithstanding the defendant's written policy requiring that PTO hours "be taken in the calendar year in which they are earned . . . . [or else] be forfeited." *Id*. at *3 (citation omitted). Specifically, the plaintiff in *Winters* claimed that there was an unwritten exception to the PTO policy pursuant to which employees were permitted to carry forward PTO hours into subsequent years under "extraordinary business circumstances," and that the defendant had violated that policy. *Id*. (citation omitted). The court denied defendant's motion for summary judgment, which was based on the existence of the written policy. *Id*. at *9. But, in *Winters*, there was undisputed testimony that defendant had made oral promises to plaintiff that he would be permitted to carry forward his unused PTO hours from one year to the next and that plaintiff had relied on that promise in not using his PTO. *Id*. at *8–9. Under those circumstances, the court reached the conclusion that a jury could find that there was a meeting of the minds entitling plaintiff to carry forward unused PTO. *Id*. at *9. In contrast, Plaintiff here has not alleged facts to support that there was a meeting of the minds that to grandfather him into the pre-2017 Policy and has only provided his pay stubs as evidence of this purported contract. *See* Compl. ¶¶ 14–15; *see also Yurman*, 2008 WL 11417672, at *8 (finding that a plaintiff alleging entitlement to unused vacation time pursuant to a policy that differs from one laid out in an employee manual must point to a specific agreement between the employer and plaintiff articulating this entitlement). Therefore, Plaintiff fails to allege a breach of contract claim.

In short, accepting the allegations of the Complaint as true and giving Plaintiff the benefit of all reasonable inferences, The Johnson Company still had the right to modify its policy with respect to PTO.  It did so in 2017 and Plaintiff accepted that modification when he continued to work at The Johnson Company.  He does not allege that he and the Defendants came to an enforceable agreement or modification to exempt him from the 2017 Policy or that The Johnson Company breached the terms of the 2017 Policy.  Accordingly, Plaintiff cannot maintain a claim for breach of contract.

## II.   Promissory Estoppel

Plaintiff's fourth cause of action is for promissory estoppel.  Plaintiff alleges that he accrued a substantial amount of unused PTO each year because his duties prevented him from taking PTO, and Akselrad frequently instructed him that he could not use his PTO because he was needed to "hold down the fort" while Akselrad and others travelled to London and elsewhere.  Compl. ¶ 16.  He further alleges that by way of the pay stubs, Defendants promised him that he would accrue, carry over, and be paid for all of his unused PTO and that he relied on this promise to compensate him for these days.  *Id.* ¶¶ 54–55.  Accordingly, Plaintiff claims that Defendants breached their promise by failing to compensate him for his accrued and unused PTO.  *Id.* ¶ 56.

Defendants argue that the promissory estoppel claim must be dismissed for two reasons: first, because it does not arise from events separate from the employment relationship; and second, because Plaintiff does not allege a clear and unambiguous promise.  Dkt. No. 13 at 8–11. Plaintiff responds with two counterarguments.  First, Plaintiff maintains that promissory estoppel claims are permitted, notwithstanding an agreement for employment at-will, where the promise in question is not for continued employment.  Dkt. No. 19 at 7.  Second, Plaintiff claims that The Johnson Company's promise that he was accruing and carrying over unused PTO and the

documentation of the accrued and carried over PTO reflected on his pay records was clear and unambiguous. *Id.* The Court will address each of these arguments in turn.

### A. Promissory Estoppel in the Employment Context Under New York Law

There is broad language in some federal decisions that "New York law . . . does not recognize promissory estoppel in the employment context." *Rojo v. Deutsche Bank*, 2010 WL 2560077, at *7 (S.D.N.Y. June 23, 2010), *aff'd*, 487 F. App'x 586 (2d Cir. 2012); *see also Blodgett v. Siemens Indus., Inc.*, 2018 WL 385477, at *5 (E.D.N.Y. Jan. 11, 2018) ("New York law does not recognize promissory estoppel in the employment context" (citation omitted)); *Wittig v. Mount Sinai Med. Ctr., Inc.*, 2014 WL 7234612, at *2 (S.D.N.Y. Dec. 18, 2014) (same); *Weinberg v. Mizuho Cap. Markets Corp.*, 2003 WL 22462022, at *7 (S.D.N.Y. Oct. 30, 2003) (same in the context of severance benefits); *Deutsch v. Kroll Assocs., Inc.*, 2003 WL 22203740, at *3 (S.D.N.Y. Sept. 23, 2003) (same in the context of severance benefits); *Miller v. Citicorp*, 1997 WL 96569, at *10 (S.D.N.Y. Mar. 4, 1997) (same with respect to work assignments).

More recently, however, the federal courts have recognized that no "New York state court has ever categorically barred promissory estoppel in the employment context." *Hallett v. Stuart Dean Co.*, 481 F. Supp. 3d 294, 306 (S.D.N.Y. 2020); *see also Christian v. TransPerfect Glob., Inc.*, 2018 WL 4571674, at *8 (S.D.N.Y. Sept. 24, 2018) ("[P]romissory estoppel is not absolutely foreclosed in all circumstances that arise in the employment context."); *Baguer v. Spanish Broad. Sys., Inc.*, 2007 WL 2780390, at *6 (S.D.N.Y. Sept. 20, 2007) ("[T]his Court is aware of no New York State case that has . . . adopted a categorical rejection of promissory estoppel in the employment context."). These cases, in essence, treat the question of whether a claim for promissory estoppel by an employee against his employer is foreclosed as an application of the more general proposition that a claim for promissory estoppel will not lie

where a contract already addresses the legal relationship between the parties.  *See Karmilowicz v. Hartford Fin. Servs. Grp., Inc.*, 494 F. App'x 153, 157–58 (2d Cir. 2012) ("Under New York law, 'quasi-contractual relief is unavailable where an express contract covers the subject matter.'" (alterations omitted) (quoting *City of Yonkers v. Otis Elevator Co.*, 844 F.2d 42, 48 (2d Cir. 1988))); *cf. Christian,* 2018 WL 4571674, at *8 (courts generally apply the bar on promissory estoppel claims in the employment context "when no promise arises that is separate from an employment relationship"); *O'Grady v. BlueCrest Cap. Mgmt. LLP*, 111 F. Supp. 3d 494, 504 (S.D.N.Y. 2015), *aff'd*, 646 F. App'x 2 (2d Cir. 2016) ("It is well settled that '[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter.'" (quoting *Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987))); *Wittig*, 2014 WL 7234612, at *2 (rejecting a promissory estoppel claim where a contract governs the relationship between the parties).  Thus, for example, where a plaintiff, who had been the defendant company's CEO, claimed that he was entitled to a long-term incentive plan ("LTIP") that he had discussed with the board but that had not been included in his written contract, the court held that the plaintiff failed to show reasonable reliance upon the promise of the LTIP, in part, because he was a sophisticated executive who should have known to contract for such a bonus in writing rather than rely on representations made during the negotiations. *Hallett v. Stuart Dean Co.*, 517 F. Supp. 3d 260, 285–86 (S.D.N.Y. 2021).  In *Hallett,* the court determined that since the promise contradicted the written contract, the promissory estoppel claim could not be sustained.  *Id.*; *see also Bader v. Wells Fargo Home Mortg. Inc.*, 773 F. Supp. 2d 397, 415 (S.D.N.Y. 2011) (dismissing a promissory estoppel claim based upon the promise of a bonus when the contract explicitly said that such bonuses were discretionary).

Likewise, if the promises concern "the duration of [p]laintiffs' employment and the payment of salary and benefits earned through such employment," a plaintiff who is at-will cannot state a promissory estoppel claim.  *Wood v. Mike Bloomberg 2020, Inc.*, 2022 WL 891052, at *10 (S.D.N.Y. Mar. 25, 2022).  That conclusion is a necessary logical corollary to the settled proposition under New York law that an employment agreement that is not for a specific duration will be considered at-will, *see Horn v. New York Times*, 790 N.E.2d 753, 755 (N.Y. 2003), permitting either the employer or the employee to terminate the relationship at any time for any reason or for no reason at all, *see Smalley v. Dreyfus Corp.*, 882 N.E.2d 882, 884 (N.Y. 2008) (stating that in an at will employment agreement, "either the employer or the employee generally may terminate the at-will employment for any reason, or for no reason").  Unless the employer and the employee form an agreement supported by consideration that the relationship is other than at-will, the employee is as free to leave for other employment as the employer is free to terminate employment.  *See Auburn Draying Co. v. Wardell*, 165 N.Y.S. 469, 471 (4th Dep't 1917), *aff'd*, 124 N.E. 97 (N.Y. 1919).  The law thus cannot be that an at-will employee can assert a claim for promissory estoppel to, in effect, ensure her continued employment (or the compensation she would be paid based on that continued employment).  Were it otherwise, the requirements of meeting of the minds and consideration required to form an agreement  would be defeated by the expedience of pleading a promise upon which the employee relied.  *See Marino v. Oakwood Care Ctr.*, 774 N.Y.S.2d 562, 563 (2d Dep't 2004); *Arias v. Women in Need, Inc.*, 712 N.Y.S.2d 103, 104 (1st Dep't 2000).

By the same token, however, courts in this district have permitted promissory estoppel claims to move forward when an employee alleged he was induced to perform duties outside of his role in exchange for equity in the employer, *see Christian,* 2018 WL 4571674, at *8, and

when an employee alleged retaliation for his report of misconduct when the employer's handbook promised that there would be no retaliation, *see Joshi v. Trustees of Columbia Univ. in City of New York*, 2018 WL 2417846, at *9 (S.D.N.Y. May 29, 2018).[2]  New York state courts have also denied defendants' motions to dismiss in certain promissory estoppel cases arising out of an employment relationship.  For example, in *Agress v. Clarkstown Cent. Sch. Dist.*, 895 N.Y.S.2d 432 (2d Dep't 2010), the court denied a defendant-employer's motion to dismiss an employee's promissory estoppel claim premised upon denial of continuing health insurance coverage that she had allegedly been promised and that induced her to make certain employment and insurance decisions.  *Id.* at 434.  In addition, in *Lord v. Marilyn Model Mgmt., Inc.* 104 N.Y.S.3d 622 (1st Dep't 2019), the court denied a defendant's motion to dismiss a plaintiff's promissory estoppel claim alleging that he relocate to another country based on the defendant's promise of employment.  *Id.* at 623–24.  In each of these instances, the claims of promissory estoppel did not, in effect, seek to enforce an agreement for continued employment.

The Restatement (Second) of Contracts—to which New York courts turn for its interpretation of promissory estoppel, —also does not categorically bar an employee from asserting a claim of promissory estoppel against her employer.  Restatement (Second) of Contracts § 139, Comment b, Illustration 2 (providing an employment dispute in which a plaintiff is induced to let his right to return to his prior employer expire in exchange for a new job as an example of a valid promissory estoppel claim); *see also In re Est. of Hennel*, 80 N.E.3d 1017, 1021 (N.Y. 2017) (citing this provision of the Restatement and noting that "[t]his Court

---

[2] The Court in *Joshi* addressed this claim at the motion to dismiss stage, denying the motion as to the breach of contract claim due to factual disputes pertaining to "the prominence and clarify of disclaimer language" within the handbook as to whether it was an implied contract.  *See id.* at *6–7.  There was thus no question of whether the presence of a handbook, as a binding contract, would have foreclosed the promissory estoppel claim.

has previously cited section 139 of the Restatement with approval"); *Farash v. Sykes Datatronics, Inc.*, 452 N.E.2d 1245, 1247 (N.Y. 1983); *Swerdloff v. Mobil Oil Corp.*, 427 N.Y.S.2d 266, 268–69 (2d Dep't 1980) (applying the Restatement to an employment claim).

Thus, New York state courts will only impose a general bar to such claims under the follow three circumstances.  First, at-will employees cannot assert claims stating that they relied upon promises of continued employment.  *See Presler v. Domestic & Foreign Missionary Soc'y of Protestant Episcopal Church in US*, 980 N.Y.S.2d 2, 3 (1st Dep't 2014) (stating that a claim of promissory estoppel is not "available to avoid the at will doctrine."); *Hobler v. Hussain*; 975 N.Y.S.2d 212, 215 (3d Dep't 2013) (stating that when employment is at-will, a plaintiff's reliance on a prospective employer's representations concerning the security of the position is not reasonable); *Marino*, 774 N.Y.S.2d at 563 ("[S]ince the plaintiff was offered only at-will employment, she cannot establish reasonable reliance."); *Arias v. Women in Need, Inc.*, 712 N.Y.S.2d 103, 103 (1st Dep't 2000) (same).  Second, promises of employment that induce employees to leave other jobs cannot be the basis of a promissory estoppel claim.  *See Chung v. Williams Schwitzer & Assocs., P.C.*, 157 N.Y.S.3d 465, 468 (1st Dep't 2021) ("A promise of employment that induces one to leave a job and forego the possibility of other employment does not create a cause of action for promissory estoppel."); *Mayer v. Publishers Clearing House*, 613 N.Y.S.2d 190, 190 (2d Dep't 1994) ("That the defendant promised the plaintiff employment and suggested some terms of employment which led the plaintiff to leave his former job does not constitute promissory estoppel."); *Dalton v. Union Bank of Switzerland*, 520 N.Y.S.2d 764, 766 (1st Dep't 1987) ("The fact that defendant promised plaintiff employment at a certain salary with certain other benefits, which induced him to leave his former job and forego the possibility of other employment in order to remain with defendant, does not create a cause of action for

promissory estoppel."). Third, where claims for promissory estoppel are duplicative of a plaintiff's stated claim for breach of contract, such claims will be dismissed. *See Chung*, 157 N.Y.S.3d at 468 (stating that the plaintiff's promissory estoppel claim could not stand, in part, because it was "duplicative of his breach of contract claim"); *Zakrzewski v. Luxoft USA, Inc.*, 58 N.Y.S.3d 310, 312 (1st Dep't 2017) (dismissing a promissory estoppel claim because "plaintiff does not allege a duty independent of the employment agreement"); *Susman v. Commerzbank Cap. Markets Corp.*, 945 N.Y.S.2d 5, 7–8 (1st Dep't 2012) (noting that a promissory estoppel claim "cannot stand when there is a contract between the parties").

Accepting the allegations of the Complaint, it can be plausibly read not to allege a claim that would fall into any of the categories of claims that New York state courts have uniformly rejected. The promise that Plaintiff alleges Defendants made was "that he would accrue, carry over and would be paid for all of his unused PTO." Compl. ¶ 54. This promise is not one for continued employment, nor does Plaintiff allege that he was induced to leave another job based on this promise. Furthermore, Defendants assert that there is no valid and enforceable contract entitling Plaintiff to his accrued PTO. *See* Dkt. No. 13 at 6–8; *see also Hallett*, 482 F. Supp. 3d at 307; *Diedhiou v. Republic of Senegal, & Teranga, LLC*, 2021 WL 4461014, at *6 (S.D.N.Y. Sept. 29, 2021) ("[I]t is well-established that 'where a defendant disputes the existence of a valid, enforceable contract, a plaintiff may plead promissory estoppel as an alternative theory of recovery.'" (quoting *Pers. Watercraft Prod. SARL v. Robinson*, 2017 WL 4329790, at *11 (S.D.N.Y. Sept. 1, 2017)). Notwithstanding the existence of the 2017 Policy as a potentially separate contract, Plaintiff had pleaded a plausible claim that there was an independent promise induced his reasonable reliance. Construing the Complaint favorably to Plaintiff, it could be read to nearly, but not quite, allege that Defendants represented to Plaintiff that if he agreed to forego

a day of PTO, the 2017 Policy would not prevent him from taking advantage of that day of PTO in the future.  Such a promise—that if Plaintiff did not use a day of PTO to which he was entitled, the 2017 policy would not prevent him from taking advantage of it in the future—would be extrinsic to his contract and the employment relationship created by the at-will doctrine.  His claim is not a disguised one based on promises of future employment.  Unlike, for example, a promissory estoppel claim based on a promise of a future bonus, Plaintiff's claim is backwards-facing for benefits that he could plausibly believe he had already earned, as the PTO accrued in real time in conjunction with his work, and that he could have taken advantage of his PTO during those years.  It could be satisfied without the implication of a promise by Defendant to continue to employ Plaintiff and thus is distinguishable from promises of a bonus that would turn upon and presumed the plaintiff's continued employment.  Therefore, Plaintiff's claim is not categorically barred under New York state law.

### B.  The Elements of Promissory Estoppel

Although Plaintiff's promissory estoppel claim is not barred by New York state law, Plaintiff fails to allege all of the elements of promissory estoppel because, as the Complaint is currently pleaded, he does not allege an injury resulting from his reliance on Defendants' promise.  "Promissory estoppel is a legal fiction designed to substitute for contractual consideration where one party relied on another's promise without having entered into an enforceable contract."  *Bader*, 773 F. Supp. 2d at 414 (quoting *Randolph Equities, LLC v. Carbon Capital, Inc.*, 648 F. Supp. 2d 507, 523 (S.D.N.Y.2009)); *Holmes v. Lorch*, 329 F. Supp. 2d 516, 527 (S.D.N.Y. 2004) (providing that a party may not recover under a promissory estoppel theory if an enforceable contract covers the same subject matter).  As opposed to a breach of contract, the "wrong" in a promissory estoppel claim "is not primarily in depriving the

plaintiff of the promised reward but in causing the plaintiff to change position to his detriment."

Marco J. Jimenez, *The Many Faces of Promissory Estoppel: An Empirical Analysis Under the*

*Restatement (Second) of Contracts*, 57 UCLA L. Rev. 669, 676 (2010) (quoting Warren A.

Seavey, *Reliance Upon Gratuitous Promises or Other Conduct*, 64 Harv. L. Rev. 913, 926

(1951)).  "A cause of action for promissory estoppel under New York law requires the plaintiff

to prove three elements: (1) a clear and unambiguous promise; (2) reasonable and foreseeable

reliance on that promise; and (3) injury to the relying party as a result of the reliance."  *Kaye v.*

*Grossman*, 202 F.3d 611, 615 (2d Cir. 2000).  A promissory estoppel claim will not survive

absent allegations that the plaintiff took or forewent any actions in reliance upon the purported

promise.  *Cambridge Cap. LLC v. Ruby Has LLC*, 565 F. Supp. 3d 420, 459 (S.D.N.Y. 2021).

"Under New York law, the doctrine of promissory estoppel may be invoked in two situations: (1)

to enforce a promise, absent consideration, where there has been detrimental reliance, and (2) to

enforce a contract that would otherwise be barred by the Statute of Frauds."  *Joshi*, 2018 WL

2417846, at *8 (internal citation omitted); *see also Merex A.G. v. Fairchild Weston Sys., Inc.*,

29 F.3d 821, 824 (2d Cir. 1994) ("The modern doctrine of promissory estoppel may be invoked

in two situations.  First, and most traditionally, the doctrine allows for the enforcement of a

promise in the absence of bargained-for consideration.  This is known as the theory of

detrimental reliance.  Promissory estoppel has also become increasingly available to provide

relief to a party where the contract is rendered unenforceable by the Statute of Frauds." (citations

omitted)).[3]

---

[3] "There is an open question of whether an 'unconscionable injury' is a required element of a
promissory estoppel claim where the claim is not invoked to estop the application of the Statute
of Frauds."  *Christian*, 2018 WL 4571674, at *8.  No party addresses that question, and the Court
need not decide it now.

Contrary to Defendants' arguments, Plaintiff's Complaint can be read to allege an

unambiguous and clear promise.  According to Plaintiff, even after the 2017 Policy, Plaintiff's

pay stubs continued to include accrued and unused PTO that would not have been available to

Plaintiff under the 2017 Policy.  Further, according to the Complaint, days of PTO that Plaintiff

accrued and did not use after the 2017 Policy went into effect continued to appear on his

paystubs for years, the accrual rate unadjusted, notwithstanding the 2017 Policy.  Those paystubs

thus could be read to convey such a promise.  After 2017, and notwithstanding whatever the

result might have been under the 2017 Policy, if Plaintiff did not use a day of PTO available to

him, that day of PTO would continue to be available to him in the future should he continue to be

employed by Defendant.  He would not be in a "use or lose" position.  Compl. ¶ 15; *see also*

*Sternberg v. Continuum Health Partners, Inc.*, 131 N.Y.S.3d 356, 359 (2d Dep't 2020) (relying

upon representations of vacation time accrued in the plaintiff's pay stub to determine whether he

had carried days over).  It is not fatal to Plaintiff's claim that the promise was in the form of the

pay stubs and not in writing.  A clear and unambiguous promise need not take any prescribed

form.  *See In re Est. of Hennel*, 80 N.E.3d at 1022 (stating that an oral promise is sufficient to

establish a promissory estoppel claim); *Parsa v. State*, 474 N.E.2d 235, 237 (N.Y. 1984) (noting

that "a promise to pay may be spelled out from the parties' conduct"); Restatement (Second) of

Contracts § 4 ("A promise . . . may be inferred wholly or partly from conduct."); *cf. Lee v.*

*Joseph E. Seagram & Sons, Inc.*, 413 F. Supp. 693, 699 (S.D.N.Y. 1976), *aff'd*, 552 F.2d 447 (2d

Cir. 1977) (stating that the "law has outgrown  . . . formalism when the precise word was the

sovereign talisman," and that "[a] promise may be lacking, and yet the whole writing may be

'instinct with an obligation,' imperfectly expressed").  Plaintiff also alleges that he relied upon

these time stubs to convey that The Johnson Company would continue to allow him to accrue an unlimited number of PTO days.  Compl. ¶ 55.

Where Plaintiff's claim fails is that he has not sufficiently alleged that he relied to his detriment on Defendants' promise.  The Complaint alleges that Plaintiff had sacrificed opportunities to take his PTO because "[his] duties often prevented him from taking PTO," since he was needed to "'hold down the fort' while Akselrad and others travelled to London and elsewhere."  *Id.* ¶ 16.  The Complaint further states that Plaintiff had forewent his PTO "in order to fulfill his work responsibilities."  *Id.* ¶ 55.  Nowhere does Plaintiff allege that, after the 2017 Policy, he forewent a day of PTO available to him based on the promise that such day of PTO would be available to him in the future and that if not used in the future he would receive compensation for it.  Therefore, Plaintiff has not adequately alleged detrimental reliance upon Defendants' promise and has thus not stated the requisite elements for promissory estoppel.  *See also Cambridge Cap. LLC*, 565 F. Supp. 3d at 459; *Schroeder v. Pinterest Inc.*, 17 N.Y.S.3d 678, 694 (1st Dep't 2015) (dismissing promissory estoppel claim for failure to allege detrimental reliance); *Knight Sec. L.P. v. Fiduciary Tr. Co.*, 774 N.Y.S.2d 488, 490 (1st Dep't 2004) ("The complaint does not allege what plaintiff did after December 17, 2001 in reliance on Fiduciary's purported promise.").

**CONCLUSION**

The motion to dismiss is GRANTED without prejudice to Plaintiff's filing of an amended complaint limited to a repleading of Plaintiff's claim for promissory estoppel.[4]  Plaintiff must file any amended complaint within 30 days of the date of this Opinion and Order.

The Clerk of Court is respectfully directed to close the motion pending at Dkt. No. 12.


SO ORDERED.


Dated: May 1, 2023
      New York, New York

_____
            LEWIS J. LIMAN
      United States District Judge

---

[4] At this juncture, the Court declines Defendants' request to dismiss the promissory estoppel claim with prejudice.  *See* Dkt. No. 12.  FRCP 15(a)(2) provides that a court "should freely give leave [to amend] when justice so requires."  It is only proper to deny leave to replead "where there is no merit in the proposed amendments or amendment would be futile."  *Hunt v. All. N. Am. Gov't Income Tr., Inc.*, 159 F.3d 723, 728 (2d Cir. 1998).  If better pleading will not cure the cause of action, the court should deny leave.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).  The decision whether to grant leave to amend is within the sound discretion of the district court.  *Atkinson v. Singh*, 2022 WL 137634, at *3 (S.D.N.Y. Jan. 14, 2022).  Here, better pleading may cure Plaintiff's promissory estoppel claim if Plaintiff can allege he suffered an injury because of his reliance upon the information about his PTO conveyed in the pay stubs.  Accordingly, this Court finds that amendment is not futile with respect to his promissory estoppel claim and thus the claim should not be dismissed with prejudice.